# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CRYSTAL BIGLOW,                                Case No. 1:18-CV-381

      Plaintiff,                              Black, J.
                                                Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Crystal Biglow filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. Without counsel, Plaintiff presents a handwritten list of corrections, but identifies no reversible errors. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

## I. Summary of Administrative Record

On April 14, 2015, Plaintiff filed an application disability insurance benefits and supplemental security income. (Tr. 24). In both applications, Plaintiff alleges disability beginning January 15, 2009.  Plaintiff's claims were denied initially on October 8, 2015. Thereafter, Plaintiff filed a written request for a hearing in front of an administrative law judge (ALJ) on December 21, 2015. (Tr. 24). Plaintiff appeared and testified at a hearing held on October 10, 2017, in Columbus, Ohio. Carl W. Hartung, an impartial vocational expert, testified at the hearing as well. Plaintiff was informed of her right to representation, but chose to appear and testify without an attorney or other representative. Plaintiff's husband, Larry Biglow, was also present and testified on Plaintiff's behalf. On February

1, 2018, the ALJ denied Plaintiff's application. The Appeals Council denied Plaintiff's subsequent request for review. Plaintiff now seeks judicial review of the denial of her application for benefits.

Plaintiff was 39 years old when she submitted the applications. (Tr. 34). Plaintiff has a high school education, graduated from a trade school, and has only unskilled past relevant work. (Tr. 34, 53). Plaintiff testified that she lives in a trailer with her husband and is responsible for caring for a dog and four cats. (Tr. 50).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine with Grade 1 spondylolisthesis; degenerative disc disease of the cervical spine; lupus; morbid obesity; osteoarthritis of the bilateral knees; trochanteric bursitis of the left hip; and bilateral foot spurs." (Tr. 27). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> [T]he claimant can stand and walk 4-hours in an 8-hour workday; can occasionally use foot controls with the bilateral lower extremities; occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; occasionally balance; occasionally stoop; occasionally kneel; occasionally crouch; never crawl; have only occasional exposure to extreme cold; and never work at unprotected heights.

(Tr. 30).

Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is unable to perform her past relevant work. Nonetheless, there are jobs that

exist in significant numbers in the national economy that she can perform, including such jobs as addresser, document preparer, and table worker/spotter. Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff, proceeding pro se, has submitted a handwritten list of complaints. Construed liberally, the undersigned finds that Plaintiff asserts that the ALJ erred by: (1) improperly formulating her physical RFC; (2) improperly evaluating her mental impairments, and 3) failing to find her complaints of pain credible. Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by

substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national

economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

B. **The ALJ's decision is supported by Substantial Evidence**

*1. Physical RFC*

Plaintiff appears to assert that the ALJ's RFC assessment is not supported by substantial evidence. As detailed above, the ALJ determined that Plaintiff retained the RFC to perform light work if limited to standing no more than 4 hours in an 8-hour workday with postural limitations, avoidance of hazards, occasional use of foot controls, and only occasional exposure to cold temperatures. Light work involves lifting no more than 20 pounds at a time and 10 pounds frequently and can require standing or walking for a total of six hours out of an eight-hour workday. 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, *6 (1983). Plaintiff, however, asserts that she is unable to lift 20 lbs and cannot sit or stand as required to complete an 8-hour workday. Plaintiff also appears to argue that the ALJ improperly determined that Plaintiff's assertions are unavailing.

As noted by the Commissioner, the ALJ's RFC determination properly considered the objective medical evidence, the opinion evidence and Plaintiff's testimony. Notably, the ALJ thoroughly reviewed the relevant objective evidence of Plaintiff's physical

impairments and undertook a detailed analysis of the medical records in determining Plaintiff's limitations due to those impairments. (Tr. 27) (citing 20 C.F.R. § 404.1520(c)). The ALJ reasonably concluded that the objective evidence did not establish that any of Plaintiff's impairments, alone or in combination, rendered her disabled. (Tr. 30-34). With respect to Plaintiff's claims of back and neck pain, the ALJ discussed Plaintiff's treatment dating back to 2009 and the x-rays and MRIs of her spine. (Tr. 31-32) (citing Exh. 1F (Tr. 290-328); Exh. 2F (Tr. 329-334); Exh. 4F (Tr. 373-74); Exh. 6F (Tr. 428); Exh. 12F (Tr. 509-53); Exh. 17F (Tr. 599); Exh. 18F (Tr. 616- 42); Exh. 19F (Tr. 645, 648); Exh. 20F (Tr. 675, 721, 725)). The ALJ noted that although imaging showed some degenerative changes, she maintained a normal gait, negative straight leg raise tests, and no motor or sensory deficits. (Tr. 31-32) (citing Exh. 4F (Tr. 374); Exh. 6F (Tr. 428); Exh. 9F (Tr. 451-458); Exh. 13F (Tr. 554-71); Exh. 18F (Tr. 616-42); Exh. 20F (Tr. 654 748)). Regarding knee pain, the ALJ noted that imaging was normal and her doctors' assessments showed that she was doing well aside from knee pain with activity. (Tr. 32) (citing Exh. 9F (Tr. 448); Exh. 17F (Tr. 599-615); Exh. 19F (Tr. 650-52)).

The ALJ also considered that x-rays showed bilateral heel spurs and that Plaintiff was treated with heel cups, night splints, and physical therapy. (Tr. 33) (citing Exh. 4F (Tr. 357, 360); Exh. 8F (Tr. 443-47); Exh. 12F (Tr. 541); Exh. 20F (Tr. 686-89); Exh. 22F (Tr. 752-71)). The ALJ also considered Plaintiff's bursitis in her left hip. (Tr. 33) (citing Exh. 22 (Tr. 761)). He noted that she had tenderness and moderately decreased range of motion but no other deficits and she was treated with physical therapy and prednisone. (Tr. 33).

The ALJ's decision further indicates that he properly considered Plaintiff's lupus, noting that her doctors described it as "mild" in November 2013 and observed improvement by June 2014. (Tr. 32) (citing Exh. 10F (Tr. 460-85); Exh. 13F (Tr. 554-71); Exh. 16F (Tr. 590-98); Exh. 17F (Tr. 599- 615); Exh. 23F (Tr. 772-94)). The ALJ noted examinations finding that Plaintiff had normal strength, normal gait, and no atrophy. (Tr. 32-33) (citing Exh. 13F (Tr. 565)). At times, she had tenderness in her back, heels, hips, or knees, but not consistently so. (Tr. 32-33). The ALJ further noted that Dr. Mikulik had observed that medication had controlled Plaintiff's joint pain. (Tr. 32) (citing Exh. 13F (Tr. 556)). In addition, he considered that Plaintiff saw a kidney specialist in 2017 who instructed her on weight loss, diet, and exercise. (Tr. 33) (citing Exh. 21F (Tr. 749-51)).

Furthermore, the ALJ appropriately accorded significant weight to the opinions of reviewing physicians Dr. David Knierim and Dr. Elizabeth Das because their assessments were "generally consistent with the medical evidence viewed as a whole and with the claimant's own description of her activities." (Tr. 33); 20 C.F.R. § 404.1527(c) (medical opinions given greater weight when consistent with record as a whole). Both reviewers opined that with postural limitations Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and stand, walk, or sit for 6 out of 8 hours in a workday. (Tr. 33). The ALJ accepted each of these limitations, but determined that Plaintiff had the following additional limitations: (1) standing or walking for 4 hours out of an 8-hour day, (2) occasional use of foot controls with both feet, (3) and only occasional exposure to extreme cold. (Tr. 33). The ALJ reasonably considered the two medical opinions regarding Plaintiff's physical abilities and imposed greater limitations than either source identified. (Tr. 33); see *Thompson v. Astrue*, No. 1:10-cv-371, 2011 WL 3861693, *15 (S.D. Ohio

July 28, 2011) (ALJ decision supported by substantial evidence where RFC adequately accommodated established functional limitations).

As noted by the Commissioner, no treating source opined on Plaintiff's functional abilities and no medical source opined that Plaintiff had greater limitations than those found by the ALJ in the RFC.

In light of the foregoing, the undersigned finds that the ALJ's RFC assessment relating to Plaintiff's physical impairments is supported by substantial evidence.

2. *Mental Impairments*

Plaintiff also argues that the ALJ failed to properly evaluate her mental impairments. Specifically, the Plaintiff notes that if her depression worsens, it would affect her ability to concentrate.

The ALJ considered the relevant evidence and determined that Plaintiff's depression was not a severe impairment because it caused no "more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (Tr. 27-29) (citing Exh. 4F (Tr. 345, 351, 388); Exh. 7F (Tr. 434-42); Exh. 11F (Tr. 501); Exh. 12F (Tr. 527, 534, 541); Exh. 20F (Tr. 700, 725); Exh. 22F (Tr. 761)). See *also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (diagnosed condition not necessarily severe impairment). The record evidence indicated that Plaintiff behaved normally in medical appointments, maintained strong family relationships, and lived independently with normal activities. (Tr. 28-29). No mental status examinations found significant functional limitations. *Id.*

In 2015, Nurse Haecker diagnosed Plaintiff with depression and prescribed Celexa (Tr. 355-57). When Plaintiff reported continued irritability the next month, Nurse Haecker switched Plaintiff's antidepressant to Zoloft and recommended that she engage in

counseling and daily walks. (Tr. 351-53). One month later, Plaintiff reported that she was doing well on her medication and had no difficulty functioning. (Tr. 346). Plaintiff attended two counseling sessions in 2015. In March, Laura Mullikin, LSW, noted Plaintiff's depressed mood and flat affect, but otherwise normal mental status; she assessed a Global Assessment of Functioning (GAF) score of 61.[1] (Tr. 489-507). In May, a second counselor noted Plaintiff's mood was euthymic (normal). (Tr. 507).

Moreover, the ALJ properly considered the state agency psychologists' findings that opinions that Plaintiff's mental impairment was not severe and caused no more than mild functional limitations. (Tr. 34).

With respect to Plaintiff's depression, the ALJ also gave limited weight to Dr. Groneck's opinions.[2] (Tr. 33). Dr. Groneck recorded a normal mental status exam, save for a depressed mood with constricted tears and limited energy. (Tr. 437-38). Based upon his observations, Dr. Groneck opined that Plaintiff could (1) understand and remember job instructions, (2) maintain concentration, persistence, and pace, (3) conform to social expectations in a work setting, and (4) adjust to minor workplace pressures. (Tr. 439). He opined, however, that should Plaintiff's depression worsen, she might have difficulty working. Id. The ALJ accepted Dr. Groneck's opinions, in part, that Plaintiff's intelligence, memory, focus, ability to adjust, attention, concentration, persistence, and pace were all adequate to function in a working environment. (Tr. 33).

---

[1] A GAF of 61 to 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships.
[2] In August 2015, Plaintiff saw consultative examining psychologist, Dr. Taylor Groneck. (Tr. 434-36).

The Commissioner asserts that the ALJ was not required either to find Plaintiff's mental impairments "severe" or to adopt more stringent limitations based upon Dr. Groneck's statements that Plaintiff's functional abilities might decline if her depression worsens. The undersigned agrees. *See Bloch v. Richardson*, 438 F.2d 1181, 1182 (6th Cir. 1971) (risk of future heart attack not disabling); see also *Quisenberry v. Comm'r of Soc. Sec.*, No. 17-2408, 2018 WL 6264566, *11 (6th Cir. Nov. 29, 2018) (proper procedure when claimant's condition worsens after final denial of disability benefits is to file new application).

Furthermore, an ALJ's failure to find an impairment to be severe does not constitute reversible error where the ALJ determined that a claimant has at least one other severe impairment and properly considered all of the claimant's impairments, both severe and non-severe, in determining whether the claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987).

Here, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine with Grade 1 spondylolisthesis; degenerative disc disease of the cervical spine; lupus; morbid obesity; osteoarthritis of the bilateral knees; trochanteric bursitis of the left hip; and bilateral foot spurs", and then proceeded through the five-step sequential analysis. Even if there was an error, then, the ALJ's failure to consider any of the three conditions as "severe" at Step 2 of the sequential analysis will not necessarily require reversal or remand. Notably, the regulations require that if one "severe" impairment exists, all impairments-severe or otherwise-must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523,

416.923, 404.1545(e). Thus, where an ALJ errs in finding a particular impairment "non-severe" in step two of the analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC. *Meadows v. Comm'r of Soc. Sec.*, No. 1:07cv1010, 2008 WL 4911243, at *13 (S.D. Ohio 2008) (citing *Maziarz v. Secy of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Here, as detailed above, the ALJ's decision indicates that he properly considered and addressed all of Plaintiff's severe and non-severe impairments in determining his RFC.

Accordingly, Plaintiff's contention is not well-taken in this regard.

*3. Evaluation of Plaintiff's Subjective Complaints*

Plaintiff also claims that the ALJ failed to properly consider her complaints of disabling pain. In this regard, Plaintiff asserts that the ALJ's failed to consider Plaintiff's complaints of depression and severe back and neck pain.

The ALJ's assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). The new ruling emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See id.* at *11. Under SSR 16-3p, an ALJ is to consider all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms, including the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3.  Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.  Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6.  Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.  Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, 2017 WL 5180304, at *7–8; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p.

Despite clarifying the basis for the analysis of subjective complaints and corresponding elimination of the term "credibility" from the text in order to avoid "character analysis," SSR 16-3p was not intended to substantially change existing law. *See Banks v. Com'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449 at *5 (S.D. Ohio Nov. 20, 2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan. 14, 2019).  Thus, it remains the province of the ALJ and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007).

As stated, the primary distinction between SSR 16-3p and the former SSR 96-7p is the elimination of the word "credibility" and clarifying that the focus of the evaluation should be on the "consistency" of subjective complaints with the record as a whole.  The

elimination of the word "credibility" from SSR 16-3p is semantically awkward in applying prior case law, insofar as virtually all of the case law interpreting the former SSR 96-7p uses the catchphrase "credibility determination." Nevertheless, the essence of the regulatory framework remains unchanged. Therefore, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, with few exceptions. *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

Turning to that case law, an assertion of error in a credibility/consistency determination requires a particularly strong showing by a plaintiff. Like the ultimate non-disability determination, the assessment of subjective complaints must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Here, the ALJ properly set forth several specific reasons in support of his finding that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 31). See 20 C.F.R. § 416.929 (c)(4) (in evaluating the extent to which

symptoms, such as pain, limit a claimant's ability to perform work activities, the ALJ will compare a claimant's reported symptoms with the objective medical evidence and other evidence to see if there are conflicts or inconsistencies between the two). As detailed by the Commissioner, the ALJ reasonably determined that Plaintiff's complaints of disability were unsupported by the objective evidence. See 20 C.F.R. § 416.929(c)(2) (considering objective evidence in weighing claimant's statements regarding the intensity and persistence of symptoms). The ALJ also properly considered Plaintiff's report that standing aggravated her back pain and accounted for that in the RFC by limiting her to standing no more than 4 hours per workday, a stricter limitation than offered by any medical source. (Tr. 30-33); 20 C.F.R. § 404.1529(c)(3)(iii).

The ALJ also considered that Plaintiff's medications had helped her conditions and allowed her to work within her RFC. (Tr. 31-32); 20 C.F.R. § 404.1529(c)(3)(iv); s*ee Holt v. Astrue,* No. 1:10- cv-439, 2011 WL 3861891, *6 (S.D. Ohio July 6, 2011) ("an impairment that is controlled with medication is not disabling") (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993)). Additionally, the ALJ reasonably considered that Plaintiff attended two counseling sessions and reported stopping because it had improved her symptoms. (Tr. 31, 67); 15 C.F.R. § 404.1529(c)(3)(v) (other treatments relevant to subjective symptom assessment); *Dahlinghaus v. Comm'r of Soc. Sec.*, No. 1:13-cv-447, 2014 WL 12577009, *9 (S.D. Ohio. Aug. 29, 2014) (ALJ reasonably discounted Plaintiff's subjective report of symptoms where evidence showed that treatments had been effective).

The ALJ reasonably took into account Plaintiff's daily activities, noting that Plaintiff drove, cared for her pets, picked up trash outside, cooked, shopped, and knitted. (Tr. 30-

31); see 20 C.F.R. § 404.1529(c)(3)(i); *Meyer v. Comm'r of Soc. Sec.,* 2011 WL 1124698, No. 1:09-cv-814, *11 (S.D. Ohio Feb. 11, 2011) (ALJ's credibility analysis supported by substantial evidence where Plaintiff's daily activities included driving, household chores, going to the store, and attending appointments).

Based on the foregoing, the undersigned finds that the ALJ's decision adequately sets forth the reasons for his evaluation of Plaintiff's subjective complaints. In light of the ALJ's opportunity to observe Plaintiff's demeanor, the ALJ's finding in this regard is entitled to deference and should not be discarded lightly. *Kirk v. HHS*, 667 F.2d 524, 538 (6th Cir. 1981). *See also Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir. 1987). Accordingly, the Court finds substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints.

*4. New Evidence*

Plaintiff's statement of errors attached new medical records that were not reviewed by the ALJ.  Because these records were not presented to the ALJ, they cannot be considered part of the record for purposes of a substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  To consider these documents, Plaintiff must establish that she is entitled to a remand under sentence six of 42 U.S.C. § 405(g). A court can remand for consideration of new evidence only if the plaintiff establishes that the evidence is both new, that it was "not in existence or available to the claimant at the time of the administrative proceeding," and "material," meaning there is "a reasonable probability that the Secretary would have reached a different disposition." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (internal quotations and citations omitted); see also

*Hollon ex rel. Hollon v. Com'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). Moreover, the plaintiff must also establish good cause for her failure to earlier present the evidence to the ALJ. *See Bass v. McMahon*, 499 F.3d 506 (6th Cir. 2007).

Here, Plaintiff included with her Statement of Errors the results of an August 2018 MRI of her neck, a December 2018 MRI of her lower back, and a December 2018 sleep study. Additionally, she submitted to the Appeals Council ten pages of treatment notes from the Wilmington Physicians Group from March 2016 documenting treatment of her heel spurs as well as an August 2017 letter from Dr. Mikulik stating only that Plaintiff had lupus and degenerative disc disease and "[s]he has difficulty standing, prolong [sic] sitting." (Tr. 7-16, 92); see also Tr. 37-41 (list of exhibits submitted to ALJ, which does not include these documents).

As noted by the Commissioner, this evidence is not new or material. The heel spur records and Dr. Mikulik's letter—dated March 2016 and August 4, 2017, respectively—predate the October 2017 hearing; they thus are not "new" and Plaintiff has no good cause for her failure to present them before the hearing. *See Rider*, 2018 WL 1250029 at *9 (evidence not "new" if available to claimant at time of hearing and no good cause where no valid justification for failure to present evidence to ALJ). Furthermore, none of the records are "material" because there is no reasonable probability that they would have changed the ALJ's decision. The newly submitted MRI results were consistent with the MRI results from January 2011 and December 2015 that the ALJ already considered. (Tr. 311-12; Tr. 31-32).

Accordingly, the undersigned finds that the records do not constitute "new and material" evidence warranting remand pursuant to Sentence Six of 42 U.S.C. § 405(g).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

_s/Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CRYSTAL BIGLOW,                                                      Case No. 1:17-CV-381

       Plaintiff,                                                        Black, J.
                                                                     Bowman, M.J.

   v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).